**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS JESSIE GAONA,<br><br>  Plaintiff,<br><br>  v.<br><br>BROWN, et al.,<br><br>  Defendants. | Case No. 1:15-cv-01117-DLB PC<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br><br>THIRTY-DAY DEADLINE |

Plaintiff Jesus Jessie Gaona ("Plaintiff") is a California state prisoner proceeding pro se and in forma pauperis in this action pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on July 20, 2015. He filed a First Amended Complaint as of right on August 21, 2015. Plaintiff names Governor Jerry Brown, Secretary of the California Department of Corrections and Rehabilitation ("CDCR") Jeffrey Beard, former CDCR Secretary Matthew Cate, Pleasant Valley State Prison ("PVSP") Warden Scott Frauenheim, former PVSP Warden Paul Brazelton, former PVSP Warden Yates, and PVSP Medical Director Felix Igbinosa as Defendants.[1]

**A.  SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on August 21, 2015.

1

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.     SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at the Richard J. Donovan Correctional Facility. The events at issue occurred while Plaintiff was incarcerated at PVSP in Coalinga, California.

Plaintiff is a forty year old Hispanic male. On or about July 13, 1999, he was committed to the custody of CDCR. Plaintiff was transferred to PVSP in April 2011.

At the time of Plaintiff's arrival at PVSP, he was in good health. On or about February 3, 2012, he experienced symptoms of Valley Fever. Plaintiff was told he had Valley Fever on or about March 13, 2012, after a titer test revealed a score of 1:16.

On or about October 28, 2013, a subsequent titer test revealed a score of 1:128. Plaintiff was diagnosed with the disseminated form of the disease on December 9, 2013.

Plaintiff continues to suffer aching bones, shortness of breath, headaches, night sweats, dizziness, loss of appetite and weight loss. He also experiences severe emotional distress, including depression.

*Defendant Brown*

Plaintiff alleges that Defendant Brown has been the governor of California since January 3, 2011, and retains the ultimate state authority over the care and treatment of inmates. Defendant Brown was apprised of the fact that inmates of Hispanic descent, including Plaintiff, were particularly susceptible to developing severe or disseminated cocci. Nevertheless, he "personally acted to deprive Plaintiff of his rights and failed to act to protect Plaintiff. . ." ECF No. 5, at 10.

*Defendant Beard*

Defendant Beard has been the Secretary of CDCR since December 27, 2012, and oversees the management and operation of all prison facilities. Plaintiff contends that in setting and maintaining policies and practices of the organization, he "personally acted to deprive" Plaintiff of his rights and failed to act to protect him. ECF No. 5, at 10. Plaintiff alleges that all relevant times, Defendant Beard knew, or should have known, that the presence of coccidiodomycosis in and around prisons in the San Joaquin Valley posed a serious risk of harm to inmates, including Plaintiff. Beard also knew that inmates of Hispanic descent were particularly susceptible to developing severe or disseminated cocci.

*Defendant Cate*

Defendant Cate was the Secretary of CDCR from 2008 through 2012, and was responsible for the operation of all prisons. Plaintiff contends that in setting and maintaining policies and

3

practices of the organization, he "personally acted to deprive" Plaintiff of his rights and failed to act to protect him. ECF No. 5, at 11. Plaintiff alleges that all relevant times, Defendant Cate knew, or should have known, that the presence of coccidiodomycosis in and around prisons in the San Joaquin Valley posed a serious risk of harm to inmates, including Plaintiff. Cate also knew that inmates of Hispanic descent were particularly susceptible to developing severe or disseminated cocci.

*Defendant Frauenheim*

Defendant Frauenheim has been the Warden of PVSP since 2013, and is responsible for the operation of PVSP. Plaintiff alleges that all relevant times, Defendant Frauenheim knew, or should have known, that the presence of coccidiodomycosis in and around prisons in the San Joaquin Valley posed a serious risk of harm to inmates, including Plaintiff. Frauenheim also knew that inmates of Hispanic descent were particularly susceptible to developing severe or disseminated cocci. Nonetheless, Defendant Frauenheim "personally acted to deprive" Plaintiff of his rights and failed to act to protect Plaintiff. ECF No. 5, at 12.

*Defendant Brazelton*

Defendant Brazelton was the Warden of PVSP from 2012 through the fall of 2013, and was responsible for the operation of PVSP. Plaintiff alleges that all relevant times, Defendant Brazelton knew, or should have known, that the presence of coccidiodomycosis in and around prisons in the San Joaquin Valley posed a serious risk of harm to inmates, including Plaintiff. Brazelton also knew that inmates of Hispanic descent were particularly susceptible to developing severe or disseminated cocci. Nonetheless, Defendant Brazelton "personally acted to deprive" Plaintiff of his rights and failed to act to protect Plaintiff. ECF No. 5, at 12.

*Defendant Yates*

Defendant Yates was the Warden of PVSP from 2005 through 2011, and was responsible for the operation of PVSP. Plaintiff alleges that all relevant times, Defendant Yates knew, or should have known, that the presence of coccidiodomycosis in and around prisons in the San Joaquin Valley posed a serious risk of harm to inmates, including Plaintiff. Yates also knew that inmates of Hispanic descent were particularly susceptible to developing severe or disseminated cocci.

Nonetheless, Defendant Yates "personally acted to deprive" Plaintiff of his rights and failed to act to protect Plaintiff. ECF No. 5, at 13.

*Defendant Igbinosa*

Defendant Igbinosa was, at all relevant times, the medical director of PVSP, and was responsible for the health of inmates.

*History of Knowledge of State Officials*

Plaintiff alleges that California health officials have known about the prevalence of Valley Fever in the San Joaquin Valley, and the risk to inmate health, for over fifty years. Plaintiff cites numerous publications, including those in 1994 and 1996, and alleges that despite this information, CDCR built eight prisons within the hyperendemic region of the San Joaquin Valley. PVSP was one of those eight prisons.

In November 2004, Renee Kanan, Deputy Director of Health Care Services at CDCR, wrote a memorandum to all health care managers, staff members and other officials within CDCR regarding the dangers of Valley Fever at prisons in certain areas. The memo indicated that the incidence of disseminated disease is high in Hispanic and Blacks. Plaintiff contends that this memo was available to Defendants.

An August 23, 2006, internal memo confirmed that CDCR officials knew that they were exposing inmates to an elevated risk of Valley Fever. An October 27, 2006, internal memo set forth the infection rates of since 2001.

In January 2007, the California Department of Public Health released a study showing that certain ethnic groups, including Hispanics, are more likely to develop the disseminated version of the disease. The study recommended that CDCR evaluate relocating high-risk groups and, at a minimum, take steps to minimize exposure. Such steps included increasing ground cover and using protective masks when digging.

Plaintiff contends that Defendants were also apprised of the ongoing Valley Fever epidemic through a November 20, 2007, CDCR memo to staff and wardens of the prisons in the endemic area, including PVSP. The memo indicated a significant increase in the number of Valley Fever cases, including deaths, among inmates in the San Joaquin Valley in 2005.

In 2008, an executive order declared a state-wide drought and encouraged local water agencies to take aggressive action to reduce water consumption. CDCR officials interpreted this as a directive to stop maintaining grass cover, thereby increasing the risk that inmates at PVSP would contract Valley Fever.

Upon taking office in 2011, Defendant Brown did not take any action to mandate that CDCR stop relying on the executive order as justification for ceasing the only remedial measure at PVSP.

In April 2012, the California Correctional Health Care Services released a report concluding that the incidence of Valley Fever has been increasing at some prisons. The report noted that incarceration of individuals in prisons within the endemic areas will continue to cause challenging and costly cases of Valley Fever. The report also found that CDCR had done nothing between 2006 and 2010 that had any effect on cocci incidence rates at prisons in the San Joaquin Valley.

Plaintiff alleges that of all the prisons in the endemic area, Avenal State Prison and PVSP have rates of infection that are significantly higher than rates in the county in which the prison is located.

Based on these facts, Plaintiff contends that each Defendant has known that cocci has affected inmates of Hispanic dissent, and that they have access to Plaintiff's central file to determine his ethnicity for housing purposes. Plaintiff alleges that Defendants knew that placing him in a prison in the San Joaquin Valley was hazardous to his health and posed an unacceptable risk of irreparable harm. Despite this knowledge and the knowledge of remedial actions, Defendants took no steps to exclude Plaintiff from PVSP.

Plaintiff also alleges that Defendants failed to disclose the known risks to Plaintiff.

Plaintiff alleges that Defendants (1) imposed cruel and unusual punishment in violation of the Eighth Amendment; and (2) intentionally discriminated against Plaintiff based on race, in violation of the Fourteenth Amendment.

**C.    DISCUSSION**

   1.    Linkage

As explained above, section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead,

580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77, 129 S.Ct. at 1949; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.

Therefore, Plaintiff must link the named defendants to the participation in the violation at issue. Liability may not be imposed on supervisory personnel under the theory of respondeat superior, Iqbal, 556 U.S. at 676-77; Simmons, 609 F.3d at 1020-21; Ewing, 588 F.3d at 1235; Jones, 297 F.3d at 934, and supervisory personnel may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Some culpable action or inaction must be attributable to Defendants and while the creation or enforcement of, or acquiescence in, an unconstitutional policy, as alleged here, may support a claim, the policy must have been the moving force behind the violation. Starr, 652 F.3d at 1205; Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991).

All Defendants named in Plaintiff's First Amended Complaint are in supervisory positions. In other words, no Defendant had any personal interactions with Plaintiff to form a basis of liability. Therefore, Plaintiff must demonstrate that Defendants "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Insofar as he cites a policy and/or custom, Plaintiff must demonstrate that the policy or custom was the moving force behind the violation. Moreover, Plaintiff must do more than allege conclusory, speculative allegations. He must set forth facts upon which the requisite liability may be based.

Plaintiff's demonstration of knowledge relies solely on the existence of studies and/or reports that existed prior to, and during the time that Plaintiff was incarcerated at PVSP. However, Plaintiff's reliance on publications or events that are related to Valley Fever, without any specific

factual allegations to link them to an individual Defendant, is not sufficient to infer knowledge to that Defendant.

Plaintiff alleges that Defendants Brown, Beard, Cate, Frauenheim, Brazelton and Yates "personally acted" to deprive him of his constitutional rights, but this is nothing more than an unsupported, conclusory allegation. As to Defendant Igbinosa, Plaintiff does not allege that he acted in any way. The liberal standards that apply to civil rights complaints may not supply essential elements of the claim that were not pled. Chapman v. Pier One Imports (U.S.), Inc., 631 F.3d 939, 955 (9th Cir.2011). The conclusory allegations are not entitled to the presumption of truth, Iqbal, 556 U.S. at 681, and are insufficient to state a plausible claim for relief.

2. Eighth Amendment

Under the Eighth Amendment, "prison officials are . . . prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm." Parsons v. Ryan, 754 F.3d 657, 677 (9th Cir. 2014); see also Helling v. McKinney, 509 U.S. 25, 35 (1993); Farmer v. Brennan, 511 U.S. 825, 847 (1994) (prison official violates Eighth Amendment if he or she knows of a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm). "Deliberate indifference occurs when '[an] official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" Solis v. Cnty. of Los Angeles, 514 F.3d 946, 957 (9th Cir. 2008). A prisoner may state "a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to [environmental conditions] that pose an unreasonable risk of serious damage to his future health." Helling v. McKinney, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

"The second step, showing 'deliberate indifference,' involves a two part inquiry." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). "First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety." Id. (quoting Farmer, 511 U.S. at 837). "This part of [the] inquiry may be satisfied if the inmate shows that the risk posed by the deprivation is obvious." Id. (citation omitted). "Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." Id.

8

(citing Farmer, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.") (footnote omitted).

As explained above, Plaintiff has failed to sufficiently allege that any Defendant knew of a risk of harm and failed to prevent it. While he cites numerous documents and contends that such documents were available, or known, to Defendants, he does not provide any factual allegations for the Court to infer that Defendants had received the documents and were aware of their contents.

Plaintiff also alleges that Defendants had access to his central file, which would have informed them of his ethnicity. This statement also shows that his allegations are insufficient to infer any knowledge on the part of Defendants. That they may have had access to his files does not show that they knew of a risk to Plaintiff and failed to act.

Finally, Plaintiff includes an allegation against Defendant Brown that he failed to take action in 2011, when he entered office, to invalidate the executive order relating to the drought. This alleged failure to act, however, is not sufficiently connected to the alleged constitutional violation to demonstrate knowledge of a risk to Plaintiff.

Plaintiff must plausibly allege that Defendants exhibited deliberate indifference in taking, or failing to take, the alleged actions. See Lua v. Smith, 2015 WL 1565370 (E.D. Cal. 2015). While the Court recognizes that the exact circumstances required to state a claim under the Eighth Amendment based on Valley Fever exposure are not clear, it is well settled that exposure to, and contraction of, Valley Fever while housed at an endemic institution are not, by themselves, sufficient to state a claim under the Eighth Amendment. In other words, the premise that the location of CSP is so inherently dangerous due to the presence of Valley Fever cannot support a constitutional violation. See Hines v. Youssef, 2015 WL 164215, at *4 (E.D.Cal. 2015) (rejecting African-American asthmatic prisoner's Eighth Amendment claim arising from exposure to and contraction of Valley Fever); accord Williams v. Biter, 2015 WL 1830770, at *3 (E.D.Cal. 2015). This premise is unacceptable where free citizens residing in the surrounding areas tolerate this increased risk, regardless of race or medical condition. "An individual who lives out of custody . . . anywhere in the Southern San Joaquin Valley is at relatively high risk exposure to Coccidioides immitis spores," and "[u]nless there is something about a prisoner's conditions of confinement that raises the risk of

9

exposure substantially above the risk experienced by the surrounding communities, it cannot be reasoned that the prisoner is involuntarily exposed to a risk society would not tolerate." Hines, at *4.

For the reasons discussed above, Plaintiff's allegations are speculative, at best, and do not state a claim against any Defendant.

### 3. Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. First, a plaintiff establishes an equal protection claim by showing that the defendant has intentionally discriminated against him on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.2005).

In his First Amended Complaint, Plaintiff alleges that Defendants acted, or failed to act, on the basis of his Hispanic ethnicity. This claim, however, is unsupported by any factual allegations. While ethnicity is a protected class, there must be factual support to show that Defendants acted, or failed to act, *because* he was Hispanic. Plaintiff's conclusory allegations are insufficient to support a claim under the Fourteenth Amendment.

## D. CONCLUSION AND ORDER

Plaintiff does not state any cognizable claims. The Court will provide Plaintiff with the opportunity to file an amended complaint, if he believes, in good faith, he can cure the identified deficiencies. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but under section 1983, it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights and liability may not be imposed on supervisory personnel under the mere

theory of *respondeat superior*, Iqbal, 556 U.S. at 676-77; Starr v. Baca, 652 F.3d 1202, 1205-07 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed with leave to amend;
2. The Clerk's Office shall send Plaintiff a complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff must file an amended complaint curing the deficiencies identified by the Court in this order, and
4. <u>If Plaintiff fails to comply with this order, this action will be dismissed, without prejudice, for failure to obey a court order.</u>

IT IS SO ORDERED.

Dated:   **December 14, 2015**              /s/ *Dennis L. Beck*
                                           UNITED STATES MAGISTRATE JUDGE