1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   JESUS JESSIE GAONA,                    Case No. 1:15-cv-01117-DLB PC

12                Plaintiff,                ORDER DISMISSING COMPLAINT
                                            WITHOUT LEAVE TO AMEND
13         v.

14   BROWN, et al.,

15                Defendants.

16

17         Plaintiff Jesus Jessie Gaona ("Plaintiff") is a California state prisoner proceeding pro se and

18   in forma pauperis in this action pursuant to 42 U.S.C. § 1983.  Plaintiff filed his complaint on July

19   20, 2015.  He filed a First Amended Complaint as of right on August 21, 2015.

20         On December 15, 2015, the Court screened Plaintiff's First Amended Complaint and

21   dismissed it with leave to amend.  Plaintiff filed his Second Amended Complaint on February 24,

22   2016.  He names Governor Jerry Brown, Secretary of the California Department of Corrections and

23   Rehabilitation ("CDCR") Jeffrey Beard, former CDCR Secretary Matthew Cate, Pleasant Valley

24   State Prison ("PVSP") Warden Scott Frauenheim, former PVSP Warden Paul Brazelton, former

25   PVSP Warden Yates, and PVSP Medical Director Felix Igbinosa as Defendants.[1]

26   ///

27   ///

28   _____

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on August 21, 2015.

1

**A.**     **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

1    **B.**      **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

2           Plaintiff is currently incarcerated at the Richard J. Donovan Correctional Facility.  The

3    events at issue occurred while Plaintiff was incarcerated at PVSP in Coalinga, California.

4           Plaintiff is a forty year old Hispanic male.  On or about July 13, 1999, he was committed to

5    the custody of CDCR.  Plaintiff was transferred to PVSP in April 2011.

6           At the time of Plaintiff's arrival at PVSP, he was in good health.  On or about February 3,

7    2012, he experienced symptoms of Valley Fever.  Plaintiff was told he had Valley Fever on or about

8    March 13, 2012, after a titer test revealed a score of 1:16.

9           On or about October 28, 2013, a subsequent titer test revealed a score of 1:128.  Plaintiff was

10   diagnosed with the disseminated form of the disease on December 9, 2013.

11          Plaintiff continues to suffer aching bones, shortness of breath, headaches, night sweats,

12   dizziness, loss of appetite and weight loss.  He also experiences severe emotional distress, including

13   depression.

14          *Defendant Brown*

15          Plaintiff alleges that Defendant Brown has been the governor of California since January 3,

16   2011, and retains the ultimate state authority over the care and treatment of inmates.  Defendant

17   Brown was apprised of the fact that inmates of Hispanic descent, including Plaintiff, were

18   particularly susceptible to developing severe or disseminated cocci.  Nevertheless, he "personally

19   acted to deprive Plaintiff of his rights and failed to act to protect Plaintiff. . ."  ECF No. 15, at 4.

20          *Defendant Beard*

21          Defendant Beard has been the Secretary of CDCR since December 27, 2012, and oversees

22   the management and operation of all prison facilities.  Plaintiff contends that in setting and

23   maintaining policies and practices of the organization, he "personally acted to deprive" Plaintiff of

24   his rights and failed to act to protect him.  ECF No. 15, at 4.  Plaintiff alleges that all relevant times,

25   Defendant Beard knew, or should have known, that the presence of coccidiodomycosis in and

26   around prisons in the San Joaquin Valley posed a serious risk of harm to inmates, including Plaintiff.

27   Beard also knew that inmates of Hispanic descent were particularly susceptible to developing severe

28   or disseminated cocci.

*Defendant Cate*

Defendant Cate was the Secretary of CDCR from 2008 through 2012, and was responsible for the operation of all prisons. Plaintiff contends that in setting and maintaining policies and practices of the organization, he "personally acted to deprive" Plaintiff of his rights and failed to act to protect him. ECF No. 15, at 5. Plaintiff alleges that all relevant times, Defendant Cate knew, or should have known, that the presence of coccidiodomycosis in and around prisons in the San Joaquin Valley posed a serious risk of harm to inmates, including Plaintiff. Cate also knew that inmates of Hispanic descent were particularly susceptible to developing severe or disseminated cocci.

*Defendant Frauenheim*

Defendant Frauenheim has been the Warden of PVSP since 2013, and is responsible for the operation of PVSP. Plaintiff alleges that all relevant times, Defendant Frauenheim knew, or should have known, that the presence of coccidiodomycosis in and around prisons in the San Joaquin Valley posed a serious risk of harm to inmates, including Plaintiff. Frauenheim also knew that inmates of Hispanic descent were particularly susceptible to developing severe or disseminated cocci. Nonetheless, Defendant Frauenheim "personally acted to deprive" Plaintiff of his rights and failed to act to protect Plaintiff. ECF No. 15, at 6.

*Defendant Brazelton*

Defendant Brazelton was the Warden of PVSP from 2012 through the fall of 2013, and was responsible for the operation of PVSP. Plaintiff alleges that all relevant times, Defendant Brazelton knew, or should have known, that the presence of coccidiodomycosis in and around prisons in the San Joaquin Valley posed a serious risk of harm to inmates, including Plaintiff. Brazelton also knew that inmates of Hispanic descent were particularly susceptible to developing severe or disseminated cocci. Nonetheless, Defendant Brazelton "personally acted to deprive" Plaintiff of his rights and failed to act to protect Plaintiff. ECF No. 5, at 12.

*Defendant Yates*

Defendant Yates was the Warden of PVSP from 2005 through 2011, and was responsible for the operation of PVSP. Plaintiff alleges that all relevant times, Defendant Yates knew, or should have known, that the presence of coccidiodomycosis in and around prisons in the San Joaquin Valley

posed a serious risk of harm to inmates, including Plaintiff.  Yates also knew that inmates of

Hispanic descent were particularly susceptible to developing severe or disseminated cocci.

Nonetheless, Defendant Yates "personally acted to deprive" Plaintiff of his rights and failed to act to

protect Plaintiff.  ECF No. 15, at 7.

*Defendant Igbinosa*

Defendant Igbinosa was, at all relevant times, the medical director of PVSP, and was

responsible for the health of inmates.

*History of Knowledge of State Officials*

Plaintiff alleges that California health officials have known about the prevalence of Valley

Fever in the San Joaquin Valley, and the risk to inmate health, for over fifty years.  Plaintiff cites

numerous publications, including those in 1994 and 1996, and alleges that despite this information,

CDCR built eight prisons within the hyperendemic region of the San Joaquin Valley.  PVSP was one

of those eight prisons.

In November 2004, Renee Kanan, Deputy Director of Health Care Services at CDCR, wrote

a memorandum to all health care managers, staff members and other officials within CDCR

regarding the dangers of Valley Fever at prisons in certain areas.  The memo indicated that the

incidence of disseminated disease is high in Hispanic and Blacks.  Plaintiff contends that this memo

was available to Defendants.

An August 23, 2006, internal memo confirmed that CDCR officials knew that they were

exposing inmates to an elevated risk of Valley Fever.  An October 27, 2006, internal memo set forth

the infection rates of since 2001.

In January 2007, the California Department of Public Health released a study showing that

certain ethnic groups, including Hispanics, are more likely to develop the disseminated version of

the disease.  The study recommended that CDCR evaluate relocating high-risk groups and, at a

minimum, take steps to minimize exposure.  Such steps included increasing ground cover and using

protective masks when digging.

Plaintiff contends that Defendants were also apprised of the ongoing Valley Fever epidemic

through a November 20, 2007, CDCR memo to staff and wardens of the prisons in the endemic area,

1    including PVSP.  The memo indicated a significant increase in the number of Valley Fever cases,

2    including deaths, among inmates in the San Joaquin Valley in 2005.

3           In 2008, an executive order declared a state-wide drought and encouraged local water

4    agencies to take aggressive action to reduce water consumption.  CDCR officials interpreted this as a

5    directive to stop maintaining grass cover, thereby increasing the risk that inmates at PVSP would

6    contract Valley Fever.

7           Upon taking office in 2011, Defendant Brown did not take any action to mandate that CDCR

8    stop relying on the executive order as justification for ceasing the only remedial measure at PVSP.

9           In April 2012, the California Correctional Health Care Services released a report concluding

10   that the incidence of Valley Fever has been increasing at some prisons.  The report noted that

11   incarceration of individuals in prisons within the endemic areas will continue to cause challenging

12   and costly cases of Valley Fever.  The report also found that CDCR had done nothing between 2006

13   and 2010 that had any effect on cocci incidence rates at prisons in the San Joaquin Valley.

14          Plaintiff alleges that of all the prisons in the endemic area, Avenal State Prison and PVSP

15   have rates of infection that are significantly higher than rates in the county in which the prison is

16   located.

17          Based on these facts, Plaintiff contends that each Defendant has known that cocci has

18   affected inmates of Hispanic dissent, and that they have access to Plaintiff's central file to determine

19   his ethnicity for housing purposes.  Plaintiff alleges that Defendants knew that placing him in a

20   prison in the San Joaquin Valley was hazardous to his health and posed an unacceptable risk of

21   irreparable harm.  Despite this knowledge and the knowledge of remedial actions, Defendants took

22   no steps to exclude Plaintiff from PVSP.

23          Plaintiff also alleges that Defendants failed to disclose the known risks to Plaintiff.

24          Plaintiff alleges that Defendants (1) imposed cruel and unusual punishment in violation of

25   the Eighth Amendment; and (2) intentionally discriminated against Plaintiff based on race, in

26   violation of the Fourteenth Amendment.

27   ///

28   ///

C.      **DISCUSSION**

Prior to discussing the merits of Plaintiff's Second Amended Complaint, the Court notes that the Second Amended Complaint and First Amended Complaint contain the exact same factual allegations.  Other than omitting the form complaint and signing the Second Amended Complaint on a different day, the two complaints are almost exact copies.  Accordingly, the analysis in the prior screening order continues to apply.

1.      Linkage

As explained above, section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77, 129 S.Ct. at 1949; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.

Therefore, Plaintiff must link the named defendants to the participation in the violation at issue.  Liability may not be imposed on supervisory personnel under the theory of respondeat superior, Iqbal, 556 U.S. at 676-77; Simmons, 609 F.3d at 1020-21; Ewing, 588 F.3d at 1235; Jones, 297 F.3d at 934, and supervisory personnel may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).  Some culpable action or inaction must be attributable to Defendants and while the creation or enforcement of, or acquiescence in, an unconstitutional policy, as alleged here, may support a claim, the policy must have been the moving force behind the violation.  Starr, 652 F.3d at 1205; Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991).

All Defendants named in Plaintiff's First Amended Complaint are in supervisory positions.  In other words, no Defendant had any personal interactions with Plaintiff to form a basis of liability.

1   Therefore, Plaintiff must demonstrate that Defendants "participated in or directed the violations, or

2   knew of the violations and failed to act to prevent them."  Insofar as he cites a policy and/or custom,

3   Plaintiff must demonstrate that the policy or custom was the moving force behind the violation.

4   Moreover, Plaintiff must do more than allege conclusory, speculative allegations.  He must set forth

5   facts upon which the requisite liability may be based.

6       Plaintiff's demonstration of knowledge relies solely on the existence of studies and/or reports

7   that existed prior to, and during the time that Plaintiff was incarcerated at PVSP.  However,

8   Plaintiff's reliance on publications or events that are related to Valley Fever, without any specific

9   factual allegations to link them to an individual Defendant, is not sufficient to infer knowledge to

10  that Defendant.

11      Plaintiff alleges that Defendants Brown, Beard, Cate, Frauenheim, Brazelton and Yates

12  "personally acted" to deprive him of his constitutional rights, but this is nothing more than an

13  unsupported, conclusory allegation.  As to Defendant Igbinosa, Plaintiff does not allege that he acted

14  in any way.  The liberal standards that apply to civil rights complaints may not supply essential

15  elements of the claim that were not pled.  Chapman v. Pier One Imports (U.S.), Inc., 631 F.3d 939,

16  955 (9th Cir.2011).  The conclusory allegations are not entitled to the presumption of truth, Iqbal,

17  556 U.S. at 681, and are insufficient to state a plausible claim for relief.

18      Plaintiff was given an opportunity to correct these issues, but he has failed to do so.

19      2.   Eighth Amendment

20      Under the Eighth Amendment, "prison officials are . . . prohibited from being deliberately

21  indifferent to policies and practices that expose inmates to a substantial risk of serious harm."

22  Parsons v. Ryan, 754 F.3d 657, 677 (9th Cir. 2014); see also Helling v. McKinney, 509 U.S. 25, 35

23  (1993); Farmer v. Brennan, 511 U.S. 825, 847 (1994) (prison official violates Eighth Amendment if

24  he or she knows of a substantial risk of serious harm to an inmate and fails to take reasonable

25  measures to avoid the harm). "Deliberate indifference occurs when '[an] official acted or failed to

26  act despite his knowledge of a substantial risk of serious harm.'" Solis v. Cnty. of Los Angeles, 514

27  F.3d 946, 957 (9th Cir. 2008).  A prisoner may state "a cause of action under the Eighth Amendment

28  by alleging that [prison officials] have, with deliberate indifference, exposed him to [environmental

conditions] that pose an unreasonable risk of serious damage to his future health." <u>Helling v. McKinney</u>, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

"The second step, showing 'deliberate indifference,' involves a two part inquiry." <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010).  "First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety." <u>Id</u>. (quoting <u>Farmer</u>, 511 U.S. at 837).  "This part of [the] inquiry may be satisfied if the inmate shows that the risk posed by the deprivation is obvious." <u>Id</u>. (citation omitted).  "Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." <u>Id</u>. (citing <u>Farmer</u>, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.") (footnote omitted).

As explained above, Plaintiff has failed to sufficiently allege that any Defendant knew of a risk of harm and failed to prevent it.  While he cites numerous documents and contends that such documents were available, or known, to Defendants, he does not provide any factual allegations for the Court to infer that Defendants had received the documents and were aware of their contents.

Plaintiff also alleges that Defendants had access to his central file, which would have informed them of his ethnicity.  This statement also shows that his allegations are insufficient to infer any knowledge on the part of Defendants.  That they may have had access to his files does not show that they knew of a risk to Plaintiff and failed to act.

Finally, Plaintiff includes an allegation against Defendant Brown that he failed to take action in 2011, when he entered office, to invalidate the executive order relating to the drought.  This alleged failure to act, however, is not sufficiently connected to the alleged constitutional violation to demonstrate knowledge of a risk to Plaintiff.

Plaintiff must plausibly allege that Defendants exhibited deliberate indifference in taking, or failing to take, the alleged actions.  <u>See</u> <u>Lua v. Smith</u>, 2015 WL 1565370 (E.D. Cal. 2015). While the Court recognizes that the exact circumstances required to state a claim under the Eighth Amendment based on Valley Fever exposure are not clear, it is well settled that exposure to, and contraction of, Valley Fever while housed at an endemic institution are not, by themselves, sufficient to state a claim under the Eighth Amendment. In other words, the premise that the location of CSP is so

1    inherently dangerous due to the presence of Valley Fever cannot support a constitutional violation.

2    See Hines v. Youssef, 2015 WL 164215, at *4 (E.D.Cal. 2015) (rejecting African-American

3    asthmatic prisoner's Eighth Amendment claim arising from exposure to and contraction of Valley

4    Fever); accord Williams v. Biter, 2015 WL 1830770, at *3 (E.D.Cal. 2015). This premise is

5    unacceptable where free citizens residing in the surrounding areas tolerate this increased risk,

6    regardless of race or medical condition. "An individual who lives out of custody . . . anywhere in the

7    Southern San Joaquin Valley is at relatively high risk exposure to Coccidioides immitis spores," and

8    "[u]nless there is something about a prisoner's conditions of confinement that raises the risk of

9    exposure substantially above the risk experienced by the surrounding communities, it cannot be

10   reasoned that the prisoner is involuntarily exposed to a risk society would not tolerate." Hines, at *4.

11   For the reasons discussed above, Plaintiff's allegations are speculative, at best, and do not

12   state a claim against any Defendant.  Plaintiff was given an opportunity to correct these issues, but

13   he has failed to do so.

14            3.      Equal Protection

15   The Equal Protection Clause requires that persons who are similarly situated be treated alike.

16   City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  An equal protection

17   claim may be established in two ways.  First, a plaintiff establishes an equal protection claim by

18   showing that the defendant has intentionally discriminated against him on the basis of the plaintiff's

19   membership in a protected class.  See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th

20   Cir.2001).  Under this theory of equal protection, the plaintiff must show that the defendants' actions

21   were a result of the plaintiff's membership in a suspect class, such as race.  Thornton v. City of St.

22   Helens, 425 F.3d 1158, 1167 (9th Cir.2005).

23   In his First Amended Complaint, Plaintiff alleges that Defendants acted, or failed to act, on

24   the basis of his Hispanic ethnicity.  This claim, however, is unsupported by any factual allegations.

25   While ethnicity is a protected class, there must be factual support to show that Defendants acted, or

26   failed to act, because he was Hispanic.  Plaintiff's conclusory allegations are insufficient to support a

27   claim under the Fourteenth Amendment.

28   ///

10

Plaintiff was given an opportunity to correct these issues, but he has failed to do so.

**D.**     **CONCLUSION AND ORDER**

Plaintiff does not state any cognizable claims.  The Court provided Plaintiff with an opportunity to correct the deficiencies, but rather than provide additional facts, Plaintiff simply submitted the same complaint.  Further leave to amend is not warranted.  Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Accordingly, this action is DISMISSED WITHOUT LEAVE TO AMEND for failure to state a claim for which relief may be granted.

This terminates this action in its entirety.

IT IS SO ORDERED.

Dated:  **May 11, 2016**                          **/s/ Sandra M. Snyder**
                                                      UNITED STATES MAGISTRATE JUDGE